**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:11-MC-135-RJC-DCK**

| | | |
|---|---|---|
| **BANK OF AMERICA CORPORATION** ) | | |
| ) | | |
| Petitioner, ) | | |
| ) | | |
| v. ) | **ORDER** | |
| ) | | |
| **CENTRIFY CORPORATION,** ) | | |
| ) | | |
| Respondent. ) | | |
| _____) | | |

**THIS MATTER IS BEFORE THE COURT** on Petitioner's "Motion To Quash" (Document No. 1). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will grant the motion.

## BACKGROUND

Bank of America Corporation's ("Bank of America") pending motion seeks to quash a "Subpoena To Testify At A Deposition In A Civil Action" ("Subpoena") (Document No. 1-1) delivered by Respondent Centrify Corporation ("Centrify") on or about August 17, 2011, requiring that Bank of America appear and provide testimony and documents on August 31, 2011. (Document Nos. 1, 1-1). Centrify is currently in litigation in the Northern District of California with Quest Software, Inc. ("Quest") concerning a patent infringement dispute. (Document No. 2). Bank of America is not a party to the litigation in the Northern District of California. Nevertheless, Centrify commands Bank of America's testimony and production of documents arising out of or related to Bank of America's relationship with Quest, in connection with Bank of America's licensing of Quest's "Quest Authentication Software" ("QAS Software"). Id.; see also, (Document Nos. 1-1, 1-2).

On August 30, 2011, Bank Of America filed its "Motion To Quash" (Document No. 1) and "Memorandum In Support..." (Document No. 2). Centrify filed its "Memorandum in Opposition To Motion To Quash" (Document No. 5) on September 30, 2011, which was followed by Bank of America's "Reply In Support Of Motion To Quash" (Document No. 8) on October 14, 2011.

**DISCUSSION**

Bank of America asserts by its motion that the Subpoena should be quashed pursuant to Fed.R.Civ.P. 45(c)(3)(A) because it (1) fails to allow a reasonable time to comply, (2) requires disclosure of privileged or protected matter, without appropriate safeguards, and (3) subjects Bank of America to an undue burden. (Document No. 1, pp.1-2). The undersigned finds Bank of America's undue burden argument most compelling.

The Subpoena identifies eight (8) topics for the proposed deposition and eight (8) requests for production of documents. (Document No. 1-2, pp. 2-3, 7-8). The topics and document requests are virtually identical, and include the following:

> 1. All purchase orders, invoices, bills of sale, bills of lading and other transaction documents relating to Your purchase of Quest Authentication Services.
>
> 2. All proposed, draft and/or executed agreements relating to Your purchase of Quest Authentication Services.
>
> 3. All bids, requests for bids or proposals, and presentations relating to your purchase of Quest Authentication Services.
>
> 4. User or service manual, maintenance manual and any other manuals, guides, or materials that Quest provided to you or that you obtained for each and every version of Quest Authentication Services purchased or otherwise obtained by you.
>
> 5. Quest's technical support for your use or implementation of Quest Authentication Services.
>
> 6. Your use of Quest Authentication Services, including

> documents that show the location of such use, and Your use of Quest Authentication Services' User Mapping feature.
>
> 7. Comparisons, assessments, tests, or analyses regarding Quest Authentication Services or any products or functionality that You considered implementing in place of, or as an alternative to, Quest Authentication Services, including, without limitation, Centrify Direct Control.
>
> 8. The basis or bases for Your decision to purchase Quest Authentication Services, including features, components, or functionality that influenced Your decision.

Id.

Bank of America contends that this broad Subpoena seeks information "beyond that which is relevant to the underlying litigation," as well as "documents that can be obtained from a party to the underlying litigation, namely, Quest." (Document No. 2, p.4). Bank of America argues that Centrify failed to show that it cannot obtain the requested information from Defendant Quest. Id. (citing Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 978 (Fed.Cir. 1993) ("a court may limit discovery if it determines that the discovery sought 'is obtainable from some other source that is more convenient, less burdensome, or less expensive.'")).

In response, Centrify argues that Bank of America has only asserted "boilerplate language" on the issue of relevancy, which does not justify quashing the Subpoena. (Document No. 5, p.4). Centrify, however, appears to concede that at least some of the documents requested from Bank of America could also be obtained from Quest, and in fact have been so obtained. (Document No. 5, pp.5-6). Centrify then asserts that the Subpoena requests certain documents that can only be obtained from Bank of America, including documents concerning Bank of America's use of the Quest software. Id.

To its credit, Centrify has offered to minimize the burden on Bank of America by: (1)

3

paying reasonable attorney fees for preparation of a witness for a deposition; (2) limiting the deposition to three (3) hours; (3) taking the deposition at the deponent's place of business; and (4) not requiring the production of documents beyond those which Bank of America has located. (Document No. 5, p.6). In its reply, Bank of America contends the only document it has already collected is its contract with Quest - which Centrify likely already has received from Quest - and therefore Centrify has agreed to forgo document discovery. (Document No. 8, p.2). Bank of America goes on to assert that even if the Subpoena were limited to deposition testimony, and then only to questions about Bank of America's "decision to purchase," "implementation" and "use" of the Quest software, Centrify would *still* be pursuing discovery on irrelevant topics. (Document No. 8, p.4). Bank of America argues that even questions limited to these narrowed topics bear no relevance to whether Quest is liable for infringement of any Centrify patents. (Document No. 8, pp.4-5). It contends that such "fishing" is impermissible. Id.

Although the undersigned acknowledges Centrify's efforts to reduce any burden on Bank of America, the Subpoena even as voluntarily modified, appears to seek information that Centrify can obtain from Quest and/or information that does not appear to be sufficiently relevant to Centrify's lawsuit against Quest. Centrify's response to Bank of America's relevance argument states in conclusory fashion that "the discovery sought is clearly relevant to the claims asserted in the California litigation," but fails to offer any explanation for how it is relevant. The undersigned has reviewed Centrify's "First Amended Complaint For Patent Infringement" (4:10-cv-03873-CW, Document No. 22) in the underlying case and remains unconvinced based on this record that the information Centrify seeks here from Bank of America is "clearly relevant" and cannot be obtained from a party to that lawsuit.

In granting this motion, the Court takes no position on how it might resolve any future

4

dispute about a more narrowly tailored subpoena.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that Petitioner's "Motion To Quash" (Document No. 1) is **GRANTED**.

Signed: October 28, 2011

David C. Keesler
United States Magistrate Judge